Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiffs
Ryan Cartee, Nicholas Ryan Gorman, Chris Jackson,
Aaron Rigsby, Mike Theiss,
Reed Timmer and Global Weather Productions, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN CARTEE, NICHOLAS RYAN GORMAN, CHRIS JACKSON, AARON RIGSBY, MIKE THEISS, REED TIMMER and GLOBAL WEATHER PRODUCTIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LE HUFFINGTON POST SAS,<br><br>Defendant. | CASE NO.: 3:25-cv-03643<br><br>**COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT AND REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION**<br><br>**(INJUNCTIVE RELIEF DEMANDED)** |

RYAN CARTEE, NICHOLAS RYAN GORMAN, CHRIS JACKSON, AARON RIGSBY, MIKE THEISS, REED TIMMER and GLOBAL WEATHER PRODUCTIONS, LLC ("Plaintiffs") by and through their undersigned counsel, hereby bring this Complaint against Defendant LE HUFFINGTON POST SAS ("Defendant") who operates the YOUTUBE CHANNEL named LE HUFFPOST, for damages and injunctive relief, and in support thereof states as follows:

**SUMMARY OF THE ACTION**

1. Plaintiffs bring this action for violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106, to reproduce, publicly perform, and distribute Plaintiffs' original copyrighted works

of authorship and for removal or alteration of copyright management information in violation of 17 U.S.C. § 1202.

**JURISDICTION AND VENUE**

2. This is an action arising under the Copyright Act, 17 U.S.C. §§ 501, 1202.

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

4. Defendant is subject to personal jurisdiction in California and jurisdiction is proper in this district court.

5. Jurisdiction is proper in California because Defendant is transacting business within California by using the YouTube platform that Google operates from within California to (a) commit acts of infringement, (b) profit from acts of infringement, (c) commit CMI violations, and (d) profit from CMI violations.

6. Jurisdiction is proper in California because Defendant committed tortious acts within California on the YouTube platform that Google operates in California. Defendant: (a) committed acts of infringement alleged below in California on the YouTube platform, and (b) committed CMI falsification and removal violations alleged below in California on the YouTube platform.

7. Jurisdiction is proper in California because Defendant caused Plaintiffs to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that the Defendant committed outside the state consisted of: (a) downloading Plaintiffs' copyrighted videos, (b) copying Plaintiffs' copyrighted videos, (c) editing and creating derivative works of Plaintiffs' copyrighted videos, and (d) removing and falsifying Plaintiffs' copyright management information. All these acts caused Plaintiffs to suffer tortious injury in California because after committing these acts, Defendant then uploaded the infringing videos to YouTube and displayed/performed the infringing videos on the YouTube platform with false CMI or with CMI removed. Defendant then profited from their acts by receiving advertising revenue from infringing videos, and damaged Plaintiffs by depriving Plaintiffs of the revenue that rightfully belonged to Plaintiffs and not Defendant.

2
COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT    CASE NO.: 3:25-cv-03643

8. Jurisdiction is also proper in this district court pursuant to 17 U.S.C. § 512(g)(3)(D) because Defendant consented to the jurisdiction of this federal district court when it provided the counternotification attached hereto in **Exhibit 3**, because the service provider provided with the counternotification can be found in this judicial district, namely YouTube.

9. Defendant has sufficient minimum contacts with the state of California, there is a direct connection between the Defendant's tortious acts and the state of California, and the exercise of personal jurisdiction over the Defendant complies with the Due Process Clause of the United States Constitution.

10. Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, Defendant engaged in infringement in this district, Defendant is subject to personal jurisdiction in this district, and because Defendant consented to this venue when Defendant provided the counternotification referred to herein because the service provider provided with the counternotification can be found in this judicial district.

12. Defendant may be served by and through the email address listed in its counternotice and through YOUTUBE that acted as their agent and Defendant agreed to accept service of process through YOUTUBE from Plaintiffs or an agent of Plaintiffs in the counternotification pursuant to 17 U.S.C. § 512(g)(3)(D).

**PLAINTIFFS**

13. RYAN CARTEE is a professional storm chaser and videographer that travels the country in pursuit of capturing extreme weather. His content has been licensed by many news outlets globally. Cartee has volunteered in disasters and assisted first responders on numerous occasions during his decade long experience.

14.     NICHOLAS RYAN GORMAN ("Gorman") is an experienced weather spotter with over eight years of fieldwork and six years dedicated to storm chasing. As a committed member of the non-profit organization, The Y'all Squad, Nicholas plays a vital role in delivering disaster relief supplies to communities most affected by tornadoes and severe storms. While on the road, Nicholas livestreams real-time storm footage through Severe Studios, captures high-quality video, and provides critical weather reports to news outlets and the National Weather Service. His dedication to public safety extends beyond forecasting—he has completed EMT training to assist first responders in the immediate aftermath of a disaster. The sale of his storm footage helps fund future chases and ensures his vehicle is equipped with the latest technology, allowing him to deliver timely, accurate reports when they're needed most.

15.     CHRIS JACKSON ("Jackson") is a professional photographer and videographer. His photographs from college sports to aircraft have been seen by millions. Mr. Jackson is also a meteorologist and his storm photography and videography are his first loves. In addition, Mr. Jackson is a highly trained first responder with the following credentials: National FF2 Certified; Hazardous Materials Technician; High And Low Angle Rope Rescue Technician; Trench Rescue Technician; Confined Space Rescuer; FEMA Building collapse Specialist; Federal WMD Specialist; FEMA Urban Search and Rescue Technician; NASAR SAR Tech II; Internationally Accredited Fire Instructor. (IFSAC); Internationally Accredited Swiftwater Rescue Instructor (NFPA 1670 Standard); American Heart Association BLS & Heartsaver CPR & First Aid Instructor; and FBI NCIC Certified.

16.     AARON RIGSBY ("Rigsby") is a professional storm chaser and multimedia journalist. He is highly accomplished with video licensed to many media outlets globally. He is also a freelance on-screen reporter, has assisted with scientific research, warning coordination with the National Weather Service, has a well-documented history of search and rescue including the Rolling Fork, MS tornado, Hattiesburg, MS tornado and many others. He travels internationally and has documented just about every type of extreme weather. Rigsby has been featured on numerous documentaries and his content has been seen more than 1 Billion times globally. Once his biggest fear, Rigsby turned into his biggest passion and he has been storm chasing for over a decade in

pursuit of any extreme weather he can get his hands on. Documenting over 150 tornadoes, the most extreme hurricanes of the last decade, floods, blizzards and wildfires; you name it, he's seen it. Rigsby spends his off season snowboarding, hiking, and rock climbing while also keeping followers across his social media platforms informed when severe weather strikes.

17. MIKE THEISS ("Theiss") is a famous National Geographic explorer and has traveled the world in pursuit of the most extreme weather. He has some of the most famous weather videos ever shot from Hurricane Katrina and many other weather events. Theiss has been capturing storms for 3 decades and has a licensing history to news outlets, documentaries and television shows globally.

18. REED TIMMER ("Timmer") is a meteorologist with a PHD and famous storm chaser. Dr. Timmer was featured in "Storm Chasers" television show on Discovery Channel and has worked with local, national and international media for decades. His live streams of weather events have undoubtedly saved many lives by providing outstanding coverage in real time. Dr. Timmer has one of the largest and most valuable extreme weather libraries in the world and has traveled to many countries to document storms. Dr. Timmer also has a very large social media presence with several million followers/subscribers and supporters that help finance his endeavors. Dr. Timmer has a long history of rescuing people from tornado damage to floods to blizzards. Dr. Timmer is also the only person to ever shoot a rocket into a tornado and capture extremely rare data from inside of a tornado.

19. GLOBAL WEATHER PRODUCTIONS, LLC ("GWP") is a syndicator of award-winning videographic content created by talented videographers who travel around the globe in pursuit of Mother Nature's wrath. GWP's videographers and photographers cover weather extremes from tornadoes, hurricanes, flooding, blizzards, volcanoes and climate change impacts. GWP is a Wyoming Limited Liability Company. GWP was founded May 31, 2023. Michael Brandon Clement is the sole proprietor/owner of GWP[1].

---

[1] Prior to filling of this lawsuit, Michael Brandon Clement and Jonathan Petramala executed written transfer assignments with GWP. GWP is the exclusive licensee of Clement's and Petramala's videos at issue in this matter.

5

COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                              CASE NO.: 3:25-cv-03643

20. MICHAEL BRANDON CLEMENT ("Clement") is an award-winning videographer and drone pilot that has licensed content to hundreds of media outlets globally. He has been documenting extreme weather for almost 30 years. He has been featured on Netflix, HBO and many other documentaries. His company WxChasing has a well-established brand and large following on social media. His content has amassed Billions of views. Clement has assisted with first responders, charities and regularly provides ground truth to the National Weather Service and major media outlets relaying vital information to the public.

21. JONATHAN PETRAMALA ("Petramala") is a professional storyteller and has a degree in journalism. He has a large social media network following documenting his stories during and after major weather events. Petramala has worked from local to national media spanning more than two decades and has performed water rescues, pulled people trapped from tornado debris and helped people out of a trapped car. His content has been viewed hundreds of millions of times and been licensed to news outlets globally. Petramala was also the writer and director in multiple documentaries and been featured in other documentaries.

22. Plaintiffs' videos of extreme weather events are frequently copied, downloaded, and reuploaded by infringers. Plaintiffs are popular and frequent sources of footage of weather events that cannot be obtained elsewhere. This makes Plaintiffs frequent targets for infringers and pirates.

23. Plaintiffs operate popular and valuable YouTube channels on the YouTube platform.

24. Plaintiffs' YouTube channels are viewed by substantial numbers of California residents who also view advertising placed on the videos on those channels by YouTube.

25. When infringement occurs to Plaintiffs' copyrighted Works, Plaintiffs are injured and damaged in California. When someone infringes on Plaintiffs' copyright like Defendant, Plaintiffs loses out on potential sales or licensing revenue to other California businesses. When Plaintiffs' copyrighted work is infringed upon and widely distributed on YouTube without Plaintiffs' permission like Defendant did, it damages Plaintiffs' reputation as a professional source of valuable extreme weather video content and makes it more difficult for Plaintiffs to negotiate valuable licenses from clients and potential clients in California in the future.

## YOUTUBE AND GOOGLE LLC

26. YouTube is a video-sharing platform where users can watch, upload, and share videos. It is one of the most popular websites in the world, with over 2 billion active users.

27. Google LLC owns YouTube.

28. YouTube is headquartered in this judicial district.

29. YouTube's main business is advertising. It generates revenue by selling advertising space on its website and mobile apps. Advertisers can target their ads to specific demographics, interests, and even keywords. This allows them to reach their target audience with a high degree of accuracy. YouTube also earns revenue from its YouTube Premium subscription service. YouTube Premium members can watch videos without ads, download videos for offline viewing, and access YouTube Music Premium. In addition to advertising and subscriptions, YouTube also generates revenue from other sources, such as channel memberships.

30. YouTube is a very profitable business. In 2021, it generated $28.8 billion in revenue and $20.6 billion in profit. Some of the factors that have contributed to YouTube's success are:

   a. The large number of users: YouTube has over 2 billion active users worldwide.
   b. The high level of engagement: Users watch an average of 1 hour and 20 minutes of YouTube videos per day.
   c. The wide variety of content: YouTube offers a wide variety of content, from music videos to educational tutorials to funny cat videos.
   d. The ease of use: YouTube is easy to use and navigate.
   e. The monetization opportunities: YouTube offers a variety of ways for creators to monetize their content, such as through advertising, channel memberships, and Super Chat.

## DEFENDANT

31. LE HUFFINGTON POST SAS operates the YOUTUBE CHANNEL named LE HUFFPOST.

32. Defendant submitted the counternotice in response to Plaintiffs' takedown notices. *See* **Exhibit 3**.

33. Defendant copied and downloaded Plaintiffs' copyrighted Works from YouTube.

34. After Defendant downloaded Plaintiffs' Works, it edited the Works, removed Plaintiffs' copyright management information, and then uploaded infringing versions of Plaintiffs' Works to YouTube.

35. Defendant copied Plaintiffs' Works in order to advertise, market and promote its YouTube channel, grow its YouTube channel subscriber base, earn money from advertising to its YouTube subscribers, and engage in other money-making business activities using Plaintiffs' copyrighted media content.

36. Defendant committed the violations alleged in connection with Defendant's business for purposes of advertising to the public, including YouTube viewers in California, in the course and scope of the Defendant's business.

37. The YouTube and Google AdSense terms of service prohibit the Defendant from engaging in the actions alleged herein. Specifically, the Defendant agreed (1) it is not allowed to upload content that includes third-party intellectual property (such as copyrighted material) unless with permission from that party or are otherwise legally entitled to do so; (2) it is responsible for the content uploaded to YouTube, and may be liable for any copyright infringement claims that arise from your content; (3) YouTube may remove or disable access to any content that it believes infringes on someone else's copyright.

38. Attached hereto as **Exhibit 1** is a list showing the Defendant's links to its channel, the number of subscribers, and the Plaintiffs' Works that are the subject of this action.

39. The Defendant's YouTube channel is extremely popular and valuable.

40. The Defendant's YouTube channel earns significant revenue from the performance and display of pirated video content.

41. The Defendant monetized the videos it stole from Plaintiffs. Monetizing videos on YouTube involves enabling advertisements to be displayed on your videos, which allows you to earn money through the YouTube Partner Program. The process works like this:

a. Eligibility: To monetize your videos, you need to meet certain eligibility criteria set by YouTube. You have to have at least 1,000 subscribers on your channel and a total of 4,000 watch hours in the past 12 months.

b. Joining the YouTube Partner Program: Once you meet the eligibility requirements, you can apply to join the YouTube Partner Program (YPP). This program allows you to monetize your videos by enabling ads on them. If your application is approved, you gain access to various monetization features.

c. Ad Formats: YouTube offers different ad formats that can appear on your videos, including pre-roll ads (shown before your video starts), mid-roll ads (shown during longer videos), and display ads (overlayed on the video or beside it). The specific types of ads displayed on your videos may depend on factors like the viewer's location and the advertiser's targeting preferences.

d. Revenue Sharing: When ads are displayed on your videos, you earn a portion of the revenue generated by those ads. The exact revenue split varies, but generally, creators receive around 55% of the ad revenue, while YouTube retains the remaining 45%. The revenue is based on factors such as the number of ad impressions, viewer engagement, and the advertisers' bidding.

e. AdSense Account: To receive payments for your YouTube earnings, you need to have an AdSense account linked to your YouTube channel. AdSense is a program by Google that allows publishers (in this case, YouTube creators) to earn money from ads. Once your AdSense account is set up and linked to your YouTube channel, you can manage your earnings and payment settings.

f. Payment Threshold: YouTube pays creators once they reach a payment threshold, which is typically $100. Once your earnings exceed this threshold, you become eligible for payment. YouTube offers various payment methods, such as direct deposit or wire transfer, depending on your country.

g. Other Revenue Streams: While ad revenue is a significant way to monetize your YouTube channel, creators often explore other revenue streams as well. These can include brand partnerships, sponsorships, merchandise sales, crowdfunding, and more.

42. Defendant had access to and downloaded Plaintiffs' copyrighted Works hosted by YouTube from Plaintiffs' YouTube Channels, Facebook pages or other social media platforms.

43. Once downloaded, Defendant edited the pirated videos to remove or crop out Plaintiffs' proprietary watermarks and metadata. After editing the pirated videos, Defendant combined the Plaintiffs' videos with other video content that it either stole from others or created themselves and then reupload the resulting video to their YouTube channel and enabled advertising on them to earn monetization revenue.

## THE COPYRIGHTED WORKS AT ISSUE

44. The authors of the Works at issue are listed in **Exhibit 1,** along with the URLs where the Works can be found online.

45. The Works at issue in this case are registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). Copies of the Registration Certificates are attached hereto as **Exhibit 2**.

46. At all relevant times, Plaintiffs were the exclusive agents of the Works at issue in this case.

## INFRINGEMENT BY DEFENDANT

47. Defendant has never been licensed to use the Works at issue in this action for any purpose.

48. On a date after the Works listed in **Exhibit 1** at issue in this action were created, but prior to the filing of this action, Defendant copied the Works and removed Plaintiffs' copyright management information from the Works.

49. Defendant copied the Works, publicly performed the Works, made further copies and distributed the Works on the internet without Plaintiffs' or the authors' permission, and without Plaintiffs' copyright management information.

50. Prior to the filing of this action, on a date after the Works were registered, Plaintiffs discovered the unauthorized use of the Works by Defendant.

51. Plaintiffs notified YouTube and Defendant of the allegations set forth herein in DMCA notices. Attached hereto as **Exhibit 5** are the Takedown notices.

### COUNT I - COPYRIGHT INFRINGEMENT

52. Plaintiffs incorporate the allegations of paragraphs 1 through 50 of this Complaint as if fully set forth herein.

53. Plaintiffs own valid copyrights in the Works at issue listed on **Exhibit 1.**

54. The Works at issue in this case were registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a), as shown in **Exhibit 2**.

55. Defendant copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without Plaintiffs' authorization in violation of 17 U.S.C. § 501. Screenshots of the unauthorized uses are attached hereto as **Exhibit 4**.

56. Defendant profited from the monetization of Plaintiffs' copyrighted content by placing advertising on the Plaintiffs' Works and those profits rightfully belong to Plaintiffs.

57. Plaintiffs has been damaged.

58. The harm caused to Plaintiffs is irreparable.

### COUNT II - REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

59. Plaintiffs incorporate the allegations of paragraphs 1 through 50 of this Complaint as if fully set forth herein.

60. The Works at issue in this case set forth on **Exhibit 1** contained copyright management information ("CMI") consisting of watermarks identifying the Works as "NOT FOR BROADCAST" and the property of WXChasing or similar markings that Plaintiffs use to identify and associate itself with its Works.

61. Defendant knowingly and with the intent to enable or facilitate copyright infringement, removed CMI from the Works at issue in this action in violation of 17 U.S.C. § 1202(b).

62. Defendant committed these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

63. Defendant caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

64. Plaintiffs have been damaged.

65. The harm caused to Plaintiffs has been irreparable.

**COUNT III - FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION**

66. Plaintiffs incorporate the allegations of paragraphs 1 through 50 of this Complaint as if fully set forth herein.

67. Defendant knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false.

68. By uploading content to YouTube, Defendant declared that it had the necessary rights or permissions to distribute and share that content.

69. Defendant's YouTube channel provided identifying information for Defendant that was copyright management information that is falsely claimed ownership or rights in the Works displayed there that was false and provided to induce, enable, facilitate or conceal infringement of Plaintiffs' Works in violation of 17 U.S.C. § 1202(a).

70. Defendant caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

71. Plaintiffs have been damaged.

72. The harm caused to Plaintiffs has been irreparable.

WHEREFORE, Plaintiffs pray for judgment against the Defendant that:

a. Defendant, its officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. §§ 501, 1203;

b. Defendant be required to pay Plaintiffs' actual damages and Defendant's profits attributable to the infringement, or, at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. §§ 504, and 1203;

c. Plaintiffs be awarded its attorneys' fees and costs of suit under the applicable statutes sued upon;

d. Plaintiffs be awarded pre- and post-judgment interest; and

e. Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED: April 25, 2025                    Respectfully submitted,

*/s/ Matthew L. Rollin*
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiffs Ryan Cartee, Nicholas Ryan Gorman, Chris Jackson, Aaron Rigsby, Mike Theiss, Reed Timmer and Global Weather Productions, LLC*